## DICKERSON, guardian, *v.* BOWEN, by next friend.

1. A ward has the right to choose a new guardian, on his arrival at the age of fourteen years, subject to the right of the ordinary to refuse his sanction, if the selection be unwise or imprudent.

2. Where the ward is over fourteen years of age, and resides in a county different from that of the guardian's appointment, the ordinary of

the county of the ward's residence approves the ward's selection of a guardian.

3. The new guardian can not be appointed until the letters of the former guardian are revoked.

4. Where a ward, by his next friend, presents a petition to the ordinary of the county of the guardian's appointment, reciting, that he is over fourteen years old, that he is a resident of a different county in this State, and that he has presented a fit and suitable person to the ordinary of the county of his residence, whom he desires to be his guardian, and who has accepted the trust, and will, upon appointment, qualify, and prays the revocation of the letters of his present guardian, the ordinary of the county of the guardian's appointment is without jurisdiction to pass upon the fitness of the new guardian selected by the ward; but he should revoke the letters of guardianship, the revocation to become effective upon the appointment and qualification of the new guardian by the ordinary of the county of the minor's residence.

Submitted February 25,—Decided April 12, 1907.

Appeal.   Before Judge Rawlings.   Bulloch superior court.   April 27, 1906.

James Bowen, by his next friend, petitioned the ordinary of Bulloch county to revoke letters of guardianship granted to J. I. Dickerson.   In his petition it is stated, that he is a minor child of Elizabeth Lyons, and is over the age of fourteen years; that he is a resident of Chatham county; that J. I. Dickerson is his present guardian; that he desires the removal of Dickerson as guardian, and has, as required by law, presented Mrs. Elizabeth Lyons to the ordinary of Chatham county as a fit and suitable person, and one whom he desires to be his guardian, and that she has accepted the trust, and will, upon appointment, qualify.   In response to the rule nisi served upon the guardian, he answered that the guardian selected by, the ward was not a fit and proper person to have control of the person and property of the minor; for reasons alleged in the answer.   The ordinary passed an order revoking the letters of guardianship upon the appointment and qualification of a guardian by the ordinary of the county of the residence of the ward. From this judgment an appeal was taken to the superior court; and there, by written demurrer, the applicant moved to strike the answer of the guardian.   The demurrer was sustained, and the appeal dismissed; and Dickerson excepted.

*A. M. Deal, F. T. Lanier,* and *R. Lee Moore,* for plaintiff in error.

*D. H. Clark* and *H. B. Strange,* contra.

EVANS, J. (After stating the facts.) Perhaps in most instances a guardian and his ward have the same domicile. However, their domiciles may be different. When the ward has come to years of discretion, the residence of the guardian is not the residence of the ward, unless the ward chooses to make it his residence. *Roberts* v. *Walker,* 18 *Ga.* 5. The principle thus broadly enunciated in the case just cited should perhaps be limited to guardians who are not parents. In the case before us it was alleged, in the ward's petition to revoke the letters of guardianship of his present guardian, that he was a resident of Chatham county; and this allegation is not denied in the guardian's caveat. We must, therefore, assume, for the purposes of this case, that the ward's domicile and residence is as stated in his petition.

This ward is more than fourteen years of age, and under the law has the right to select his own guardian, subject to the approval of the ordinary. Civil Code, §2516; *Bryce* v. *Wynn,* 50 *Ga.* 332. But a new guardian can not lawfully be appointed as the successor of a guardian in office, until after a revocation of the latter's letters. *Justices* v. *Selman,* 6 *Ga.* 432; *Justices* v. *Cherry,* 14 *Ga.* 594; *Gilbert* v. *Stephens,* 106 *Ga.* 753. Hence the first step which a ward must take to remove a guardian appointed by the ordinary, and substitute therefor one of his own selection, after he has arrived at the age to make such selection, is to institute a proceeding to revoke the letters of his guardian. He can only do this by a petition filed in the court of ordinary of the county of the guardian's appointment. In *Bryce* v. *Wynn,* supra, it was said: "Before the new appointment is made, the letters of the former guardian should be revoked, and there should be a selection of a successor in the guardianship, who is willing to accept, and whose appointment would be judicious, in the judgment of the ordinary. The provisions in the code, as to the resignation of guardians and administrators, show the care that is taken to prevent a vacancy in these trusts. In each case, before a guardian or administrator is permitted to resign, he must present a fit and suitable person to the ordinary as his successor, who is willing to accept. We think it a proper rule to be followed in the case of a ward selecting a new guardian, before there should be a revocation of the letters of the former guardian." In a case where the county of the ward's residence is different from that of the guardian's appointment, we

think, from the language just quoted, and the general purpose to be subserved, that the ordinary of the county of the ward's residence should pass upon the propriety of the ward's selection. An ordinary has no jurisdiction to appoint a guardian for an infant whose residence is out of the county of the ordinary's residence. *Rives* v. *Sneed*, 25 *Ga*. 612. The power of appointment includes the power of approving the ward's selection; and as only the ordinary of the ward's residence can appoint the new guardian, it would seem that he alone could pass upon the propriety of the ward's selection.

But it may be contended that because the petition for removal should contain a representation to the court that the newly-selected guardian is a proper person, and is willing to accept the trust, these matters necessarily enter into the question presented to the ordinary when asked to remove the guardian. The reply to this is that the guardian is not removed because of any misconduct on his part, but his letters are revoked as the necessary consequence of the right conferred by law on the minor to choose a different guardian after he arrives at the age of fourteen. The sole purpose of presenting to the ordinary a suitable person who is willing to accept the guardianship is to carry out the policy of the law that there should be no hiatus between the terms of the trustees, and that a vacancy in the trust may be avoided by requiring the applicant who desires a change of trustees to show that a suitable person is willing to become the successor in the trust. A vacancy between the terms of the old and the new guardian could be much more effectually prevented by providing, in the order revoking the letters of the guardian (as was done in this case), that the judgment of revocation should be effective upon the appointment and qualification of the new guardian by the ordinary of the county of the residence of the ward. If the person thus presented should not be suitable, it is to be presumed that he would not be appointed by the proper appointing power. The case of a revocation of letters of guardianship is not altogether analogous to that of a resignation by a guardian. In the latter it is the voluntary act of the guardian which terminates the trust, and, before he will be allowed to voluntarily renounce a trust, the statute requires that he shall present to the appointing court a proper successor who is willing to assume the trust he wishes to resign. But in the case of a revo-

cation of the letters on the ground that the ward is entitled, under the law, to change his guardian, the consequent right to revoke the letters of his guardian springs from the ward's action to avail himself of his legal right, and not from any act, voluntary or involuntary, of the guardian. As the ordinary of the county of the first guardian's appointment has absolutely no power to compel the ordinary of the county of the ward's residence to accept or reject the guardian of the ward's nomination, it would seem clear that he is not vested with any power of veto over the ward's choice. We therefore conclude that the ordinary of Bulloch county was without jurisdiction to pass on the fitness of the new guardian selected by the ward; and that the answer was properly stricken.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*